# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARYANN E. CRIST and MICHAEL D. CRIST,<br><br>    Plaintiffs,<br><br>    vs.<br><br>MEDTRONIC, INC.; COVIDIEN, LP; SUSAN HEIDSIECK; MICHELLE MIYASOTO; and DOE DEFENDANTS 1–100,<br><br>    Defendants. | CIVIL NO. 21-00162 JAO-RT<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR AN ORDER OF REMAND TO THE CIRCUIT COURT OF THE FIRST CIRCUIT, STATE OF HAWAI'I |

## ORDER GRANTING PLAINTIFFS' MOTION FOR AN ORDER OF REMAND TO THE CIRCUIT COURT OF THE FIRST CIRCUIT, STATE OF HAWAI'I

Defendants Medtronic, Inc. and Covidien, LP (collectively, "Defendants" or "Manufacturer Defendants") removed this action from the Circuit Court of the First Circuit, State of Hawai'i on the basis of diversity jurisdiction, arguing that the Court may disregard the lack of complete diversity between the parties because Defendants Michelle Miyasato[1] ("Miyasato") and Susan Heidsieck ("Heidsieck") (collectively, "non-diverse Defendants") were fraudulently joined. Plaintiffs

---

[1] Plaintiffs incorrectly spelled Miyasato as Miyasoto. ECF No. 1 ¶ 8.

Maryann ("Maryann")[2] and Michael Crist (collectively, "Plaintiffs") move to remand this action to state court. *See* ECF No. 19 ("Motion"). For the following reasons, the Court GRANTS the Motion and REMANDS this action to state court.

## BACKGROUND

This product liability action stems from the alleged malfunction of a Covidien Endo GIA purple 60 load stapling device used during a surgical procedure on Maryann. ECF No. 1-1 ¶ 20. Plaintiffs initiated this action in state court on January 5, 2021, asserting the following causes of action: Count I – strict liability (manufacturing or design); Count II – strict liability (failure to warn); Count III – negligence; Count IV – breach of express warranty; Count V – breach of implied warranty; Count VI – loss of consortium; and Count VII – punitive damages against the Manufacturer Defendants. ECF No. 1-1.

On March 24, 2021, Defendants removed this action, invoking diversity jurisdiction despite the fact that the non-diverse Defendants, like Plaintiffs, are citizens of Hawai'i. ECF No. 1 ¶¶ 10–17. According to Defendants, the non-diverse Defendants' citizenship may be disregarded for diversity purposes because they were fraudulently joined in an effort to preclude removal. *Id.* ¶ 17.

---

[2] Defendants appear to incorrectly spell Maryann as MaryAnn. *Compare, e.g.*, ECF No. 1 ¶ 8, *with* ECF No. 1-1 at 1, *and* ECF No. 19-1 at 2.

## LEGAL STANDARD

Under 28 U.S.C. § 1441, a defendant may remove a civil action brought in a state court to federal district court if the district court has original jurisdiction. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679–80 (9th Cir. 2006) (footnote and citation omitted). "Removal . . . statutes are 'strictly construed,' and a 'defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability.'" *Hawaii v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014) (citation omitted); *see Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) ("The 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." (citation omitted)). Courts should presume that a case lies outside the limited jurisdiction of the federal courts. *See id.*

"If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *Dennis v. Hart*, 724 F.3d 1249, 1252 (9th Cir. 2013) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiffs move to remand for lack of complete diversity of citizenship, arguing that Defendants have failed to meet their heavy burden of establishing that

the non-diverse Defendants were fraudulently joined. ECF No. 19 at 7. Defendants contend that Plaintiffs do not assert cognizable claims against the non-diverse Defendants and there is no basis to impose liability upon Miyasato because she has never had any involvement with Defendant's surgical staplers. ECF No. 25 at 12–14.

## I.    Diversity Jurisdiction

Federal district courts have original jurisdiction over cases where the amount in controversy exceeds $75,000, exclusive of interest and costs, and where the matter in controversy is between citizens of different states. 28 U.S.C. § 1332(a)(1). Complete diversity of citizenship requires that each of the plaintiffs be a citizen of a different state than each of the defendants. *See Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1025 (9th Cir. 2007) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Moreover, actions based on diversity jurisdiction may only be removed if none of the properly joined and served defendants is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b). Thus, "[d]efendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).

Here, complete diversity is lacking because although Defendants are citizens of Delaware, Massachusetts, Colorado, Wisconsin, and Minnesota, the non-diverse Defendants and Plaintiffs share Hawaiʻi citizenship. ECF No. 1 ¶¶ 11–12, 15–17.

## II. Fraudulent Joinder

Defendants acknowledge that the non-diverse Defendants are citizens of Hawaiʻi but argue that their citizenship may be disregarded for the purposes of diversity jurisdiction because they were fraudulently joined. ECF No. 1 ¶ 17. An exception to the requirement for complete diversity exists when a non-diverse defendant was fraudulently joined. *See Hunter*, 582 F.3d at 1043. "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (citation omitted). The latter is established "if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (internal quotation marks, brackets, and citation omitted).

Removing defendants may "present the facts showing the joinder to be fraudulent." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (internal quotation marks and citations omitted); *Morris*, 236 F.3d at 1068

5

("Fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (internal quotation marks, brackets, and citation omitted)).  There is, however, a "general presumption against fraudulent joinder," which the party asserting federal jurisdiction must prove by "clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citations omitted).  A defendant claiming fraudulent joinder bears the heavy burden of facing both the strong presumption against removal jurisdiction as well as the general presumption against fraudulent joinder.  *See Hunter*, 582 F.3d at 1046.

The Ninth Circuit has clarified that the fraudulent joinder test is not equivalent to the test used to assess the sufficiency of a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  *See Grancare*, 889 F.3d at 549.  Equating the two "conflates a jurisdictional inquiry with an adjudication on the merits." *Id.* "Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id.* (citations omitted).  This standard "accords with the presumption against removal jurisdiction, under which [courts] 'strictly construe the removal statute,' and reject federal jurisdiction 'if

("Fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (internal quotation marks, brackets, and citation omitted)).  There is, however, a "general presumption against fraudulent joinder," which the party asserting federal jurisdiction must prove by "clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citations omitted).  A defendant claiming fraudulent joinder bears the heavy burden of facing both the strong presumption against removal jurisdiction as well as the general presumption against fraudulent joinder.  *See Hunter*, 582 F.3d at 1046.

The Ninth Circuit has clarified that the fraudulent joinder test is not equivalent to the test used to assess the sufficiency of a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  *See Grancare*, 889 F.3d at 549.  Equating the two "conflates a jurisdictional inquiry with an adjudication on the merits." *Id.* "Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id.* (citations omitted).  This standard "accords with the presumption against removal jurisdiction, under which [courts] 'strictly construe the removal statute,' and reject federal jurisdiction 'if

("Fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (internal quotation marks, brackets, and citation omitted)).  There is, however, a "general presumption against fraudulent joinder," which the party asserting federal jurisdiction must prove by "clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citations omitted).  A defendant claiming fraudulent joinder bears the heavy burden of facing both the strong presumption against removal jurisdiction as well as the general presumption against fraudulent joinder.  *See Hunter*, 582 F.3d at 1046.

The Ninth Circuit has clarified that the fraudulent joinder test is not equivalent to the test used to assess the sufficiency of a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  *See Grancare*, 889 F.3d at 549.  Equating the two "conflates a jurisdictional inquiry with an adjudication on the merits." *Id.* "Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id.* (citations omitted).  This standard "accords with the presumption against removal jurisdiction, under which [courts] 'strictly construe the removal statute,' and reject federal jurisdiction 'if

there is any doubt as to the right of removal in the first instance.'" *Id.* at 550 (citation omitted).

"If a plaintiff's complaint can withstand a Rule 12(b)(6) motion with respect to a particular defendant, it necessarily follows that the defendant has not been fraudulently joined." *Id.* That said, even a failure to state a claim under Rule 12(b)(6) does not necessarily mean that a plaintiff fraudulently joined a defendant. *See id.* at 549. In such instances, the district court must consider "whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* at 550. The court "must find that a defendant was properly joined and remand the case to state court if there is a '*possibility* that a state court would find that the complaint states a cause of action against any of the non-diverse defendants.'" *Id.* at 549 (brackets and citation omitted).

### A. Plaintiffs Did Not Fraudulently Join the Non-diverse Defendants

As a preliminary matter, the Court notes that Plaintiffs now limit their fraudulent joinder challenge to Heidsieck given Miyasato's representation that she is not involved with surgical staplers, nor has she ever been. ECF No. 23-1 ¶ 8 (citing ECF No. 1-2). The Court accordingly focuses on whether Heidsieck was fraudulently joined.

### 1. Plaintiffs' Intention

Defendants urge the Court to consider, in assessing fraudulent joinder, Plaintiffs' true intention for naming the non-diverse Defendants: to defeat federal jurisdiction. ECF No. 25 at 12–13. But the governing fraudulent joinder standard does not factor a plaintiff's intent and Defendants have not presented any precedential authority establishing otherwise. The Ninth Circuit has in fact deemed immaterial a plaintiff's motive for joining a defendant. *See Albi v. St. & Smith Publ'ns, Inc.*, 140 F.2d 310, 312 (9th Cir. 1944) ("[I]t is universally thought that the motive for joining such a defendant is immaterial." (footnote omitted)). It has also described fraudulent joinder as a misnomer because although the doctrine could be invoked upon a showing of actual fraud,[3] "in most cases the focus will be on whether the plaintiff can 'state a reasonable or colorable claim for relief under the applicable substantive law against the party whose presence in the action would destroy the district court's subject matter jurisdiction.'" *Weeping Hollow*, 831 F.3d at 1113 (citation omitted); *see also Albi*, 140 F.2d at 312 ("It is only where the plaintiff has not, in fact, a cause of action against the resident defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the

---

[3] "Fraudulent joinder 'is a term of art' that does not imply actual fraud." *Hall v. Kraft Heinz Food Co.*, 1:19-cv-00565-LJO-BAM, 2019 WL 2598764, at *6 (E.D. Cal. June 25, 2019) (citing *Morris*, 236 F.3d at 1067). A showing of actual fraud concerns the pleading of jurisdictional facts, *see Grancare*, 889 F.3d at 548, which is not at issue here.

jurisdiction of the federal court, that the joinder can be said to be fraudulent, entitling the real defendant to a removal." (footnote omitted)).

For these reasons, Plaintiffs' intention is irrelevant, and the Court will not entertain Defendants' supposition in applying the fraudulent joinder test.

### 2. Whether Plaintiffs Obviously Fail to State a Cause of Action against Heidsieck According to Settled Hawaiʻi Law

Plaintiffs assert strict liability, negligence, breach of express warranty, breach of implied warranty, and loss of consortium claims against the non-diverse Defendants. Defendants argue that the non-diverse Defendants, as sales representatives, cannot be held strictly or negligently liable for the allegedly defective surgical stapler used in Maryann's surgery, nor did they make any representations giving rise to a warranty.

#### a. Strict Product Liability

Under Hawaii's strict product liability law:

> one who sells or leases a defective product which is dangerous to the user or consumer or to his property is subject to liability for physical harm caused by the defective product to the ultimate user or consumer, or to his property, if (a) the seller or lessor is engaged in the business of selling or leasing such product, and (b) the product is expected to and does reach the user or consumer without substantial change in its condition after it is sold or leased.

*Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 75, 470 P.2d 240, 243 (1970); *see also Ontai v. Straub Clinic & Hosp. Inc.*, 66 Haw. 237, 241, 659 P.2d 734, 739

(1983). To establish a prima facie case for strict product liability, a plaintiff must "prove (1) a defect in the product which rendered it unreasonably dangerous for its intended or reasonably foreseeable use; and (2) a causal connection between the defect and the plaintiff's injuries." *Acoba v. Gen. Tire, Inc.*, 92 Hawaiʻi 1, 16, 986 P.2d 288, 303 (1999) (internal quotation marks, brackets, and citation omitted); *see Mullaney v. Hilton Hotels Corp.*, 634 F. Supp. 2d 1130, 1142–43 (D. Haw. 2009).

Defendants argue that sales representatives are employees of entities in the "business of selling" products so Heidsieck is not a "seller" as required for strict product liability. ECF No. 25 at 15. However, Defendants have not pointed to single Hawaiʻi appellate court decision squarely rejecting a strict product liability claim against a sales representative.[4] Defendants instead contend that there is an

---

[4] The parties cite a number of non-Hawaiʻi state court cases and district court cases, most of which are out-of-circuit, regarding the viability of imposing strict liability upon a sales representative. None of these cases are relevant because the Court looks exclusively at Hawaiʻi law to determine whether Plaintiffs can establish a claim against Heidsieck in state court. The one case cited by Defendants from this district is distinguishable, as it involved a concurrent motion to stay and motion to remand pending a transfer determination by the Judicial Panel on Multidistrict Litigation, which requires the application of a different multi-step analysis, beginning with whether the removal was "clearly improper." ECF No. 1 ¶ 24 (citing *McClelland v. Merck & Co.*, CIV. No. 06–00543 JMS/BMK, 2007 WL 178293 (D. Haw. Jan. 19, 2007)). It does not stand for the proposition that a sales representative cannot be held strictly liable. *See McClelland*, 2007 WL 178293, at *3.

10

absence of authority suggesting that a sales representative can be strictly liable.[5] *Id.* But this is not the salient inquiry. The fraudulent joinder standard requires the Court to examine whether Plaintiffs fail to state a claim against the non-diverse Defendants and the *failure is obvious under settled Hawaiʻi law*. Put another way, the Court considers whether there is a *possibility* that the *state court* would find that Plaintiffs articulate a strict product liability claim against Heidsieck. *See Grancare*, 889 F.3d at 549.

Plaintiffs' strict product liability allegations are as follows:

> 44. The Endo GIA surgical staplers, which were designed, fabricated, and manufactured by the Manufacturing Defendants, were expected to reach, and did reach users and consumers without substantial change to the condition in which they were sold.
>
> 45. The Agent Defendants served as exclusive representatives and/or agents for the Manufacturer Defendants, marketed and promoted the sales of the Manufacturer Defendants' products including the Endo GIA surgical staplers, and derived economic benefit from the sales of those products.
>
> 46. At the time of manufacture, the Endo GIA surgical staplers were defective and dangerous for their reasonably intended and foreseeable use. A properly designed and manufactured device should not jam in the middle of intended or reasonably foreseeable use.

---

[5] At the hearing, defense counsel conceded that there is no Hawaiʻi law barring Plaintiffs' claims, and that there is divergence even among other jurisdictions' cases addressing a sales representative's strict liability.

47. The Endo GIA surgical stapler was in materially the same condition at the time it malfunctioned and was being put to its intended or reasonably foreseeable use.

48. As a direct and proximate result of Defendants' manufacturing and design defects, MS. CRIST has incurred losses and damages for personal injury, loss of use and enjoyment of life, the need for periodic medical examination and treatment, and economic losses, including loss of earnings and additional medical expenses, and the expenditure of time and money, and will continue to incur losses and damages in the future.

. . . .

51. Defendants, and each of them, failed to provide accurate information to the public, including, but not limited to surgeons and other interested providers, on the risks associated with using their Endo GIA surgical staplers. Specifically, Defendants, and each of them, promoted the staplers as being safe while they used FDA reporting exemptions to avoid publicly disclosing known incidents where Endo GIA staplers injured patients due to malfunctions. As a result, neither Dr. Wong, Queen's nor Plaintiffs knew of the potential risks of injury (like the one MS. CRIST ultimately suffered) prior to MS. CRIST'S January 9th surgery.

52. Defendants, and each of them, knew that the Endo GIA stapler posed a risk to patients when used as intended because certain units were manufactured in a manner making them likely to jam during surgery.

53. Despite knowing about this defect, Defendants, and each of them, failed to warn potential consumers, including, but not limited to surgeons, other interested providers, consumers/patients and their families.

54. As a direct and proximate result of Defendants' failure to warn, MS. CRIST has incurred losses and damages for personal injury, loss of use and enjoyment of life, the need for periodic

> medical examination and treatment, and economic losses, including loss of earnings and additional medical expenses, and the expenditure of time and money, and will continue to incur losses and damages in the future.

ECF No. 1-1 ¶¶ 44–48, 51–54.

Hawaiʻi employs a "notice" pleading standard, merely requiring a plaintiff to provide a defendant with "fair notice of the claim and the ground upon which it rests. . . . It is not necessary to plead under what particular law the recovery is sought." *Bank of Am., N.A. v. Reyes-Toledo*, 143 Hawaiʻi 249, 258, 428 P.3d 761, 770 (2018) (alteration in original) (internal quotation marks and citation omitted). Based on the available authority and lack of Hawaiʻi appellate court decisions precluding strict product liability claims against sales representatives, Plaintiffs' allegations do not obviously fail according to settled Hawaiʻi law.[6] That the Hawaiʻi appellate courts have yet to expressly extend strict product liability to sales representatives is not synonymous with barring it. Defendants therefore fail to meet their burden of establishing, by clear and convincing evidence, that

---

[6] Defendants submit declarations from the non-diverse Defendants disclaiming involvement in the manufacture, design, or labeling of the subject stapler. "But a denial, even a sworn denial, of allegations does not prove their falsity[.]" *Grancare*, 889 F.3d at 551 (citations omitted). Moreover, even if Plaintiffs failed to state a claim under Rule 12(b)(6), the Court would have to consider whether any deficiency could be cured by amendment of the pleadings. *See id.* at 550.

Plaintiffs obviously fail to state a strict product liability claim against Heidsieck under *settled* Hawai'i law.

### b. Negligence and Breach of Warranty

Given the Court's determination regarding Plaintiffs' strict product liability claim, it need not address Plaintiffs' negligence and breach of warranty claims.[7] Even if Defendants could establish by clear and convincing evidence that Plaintiffs fail to state negligence and breach of warranty claims and the failure is obvious under settled Hawai'i law, the *possibility* that a Hawai'i state court would find that Plaintiffs articulate a strict product liability claim against Heidsieck requires the Court to find that Heidsieck was properly joined and remand the action to state court. *See Grancare*, 889 F.3d at 549. Accordingly, the Court concludes that Defendants have not established fraudulent joinder, let alone by clear and convincing evidence. Absent a finding of fraudulent joinder, complete diversity is lacking, and the Court is without subject matter jurisdiction. In the absence of jurisdiction, the Court must remand the action. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

---

[7] Plaintiffs did not address their breach of warranty claims in their briefing. At the hearing, counsel admitted that Plaintiffs lack the necessary evidence at this time to determine whether they can sustain a breach of warranty claim.

14

### III. Attorneys' Fees and Costs

Plaintiffs request attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c). ECF No. 19 at 30–31. When a federal court remands a case, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (citations omitted).

The Court declines to award attorneys' fees and costs under § 1447(c) because Defendants did not lack an objectively reasonable basis for seeking removal. Although the Court has concluded that Defendants failed to establish fraudulent joinder, they had some basis to argue that Plaintiffs cannot maintain their claims against the non-diverse Defendants. The Court therefore denies an award of fees and costs.

//

//

//

//

//

# CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiffs' Motion for an Order of Remand to the Circuit Court of the First Circuit, State of Hawai'i, ECF No. 19, and REMANDS this case to the Circuit Court of the First Circuit, State of Hawai'i. Plaintiffs' request for attorneys' fees and costs is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, July 2, 2021.

Jill A. Otake
United States District Judge

Civil No. 21-00162 JAO-RT, *Crist v. Medtronic, Inc.*; ORDER GRANTING PLAINTIFFS' MOTION FOR AN ORDER OF REMAND TO THE CIRCUIT COURT OF THE FIRST CIRCUIT, STATE OF HAWAI'I

16